
RECEIVED
NOV 1 2005
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| TERTIUS JOSEPH JOHNSON | CIVIL ACTION NO. 02-798 |
| VERSUS | JUDGE DOHERTY |
| APACHE CORPORATION, ET AL | MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING

### I. Introduction

Pending before the Court are three (3) motions for summary judgment filed by defendants in this matter:

(a)      Motion for Summary Judgment filed by United Production & Construction Services, Inc. ("UPCS");

(b)      Motion for Summary Judgment filed by Apache Corporation ("Apache");

(c)      Motion for Summary Judgment filed by Island Operating Company ("Island").

The motions were opposed by the plaintiff and were taken under advisement by the Court.[1]

### II. Facts

On August 19, 2001, plaintiff Tertius Johnson was allegedly injured while working as a wireline helper for his employer, Superior Energy Services, LLC, ("Superior") on an offshore platform owned by Apache and located at South Marsh Island 58-A off the coast of Louisiana. Plaintiff asserts that on the day of the accident he was working in the well bay area of the platform

---

[1] In addition to plaintiff's oppositions, UPCS' Motion for Summary Judgment has also been opposed by Apache and Island and Island's motion has been opposed by UPCS and Apache. In light of the Court's ruling and due to the fact that defendant's oppositions do not expand upon the arguments made by plaintiff, their oppositions will not be specifically addressed.

"rigging down the wireline valve and lubricator and capping up the tree connection" when a piece of grating shifted or fell out from underneath him, causing him to fall partially through the deck resulting in injury to himself. [Doc. #1, p.3, ¶ 4] Plaintiff alleges the accident was caused by a clamp used to secure the grating that broke, fell off or was not in place, which caused the grating to shift from underneath the plaintiff.[2] Plaintiff had been working on the platform in the well bay area for approximately three (3) days when the accident occurred and had not noticed any problems with the grating prior to his accident. Following the accident, an additional inspection was conducted, which found no loose grating or clips.

Plaintiff originally filed suit against Apache and later added both Island and UPCS as defendants. Apache asserts that it owned the platform but did not operate it or maintain personnel on the platform.[3] Rather, the platform was operated for Apache by Island Operating Company pursuant to a contract purportedly making Island an independent contractor.[4] Both Apache and Island agree that pursuant to an agreement between Apache and Island, Island performed routine

---

[2]Plaintiff and Apache state that the grating in this area was secured by grating clips, rather than welded to the floor, to make it easier to remove when working on the well head.

[3] Both plaintiff and Island argue in briefs that Apache maintained control of the platform.

[4]See "Master Service Contract" attached as Exhibit 2 to Apache's Motion for Summary Judgment [Doc. 59], stating in pertinent part:

> 7. INDEPENDENT CONTRACTOR. Contractor shall be and perform at all times as an independent contractor and neither Contractor nor any Contractor Personnel shall be deemed to be subject to the control or direction of Company as to the details of the Work, Company being interested only in the compliance of the Work with the job order. Company shall be entitled to make such inspections as may be necessary in furtherance of its interest and to determine that the Work is being performed in accordance with the job order.

maintenance on the platform and also conducted weekly inspections of the grating and handrails.[5]

Approximately four and a half months prior to plaintiff's accident, Island personnel determined that the well bay area was in need of repairs to the deck grating and grating supports.[6] Because this called for more than minor repairs (which Island normally performed), Island notified Apache of the problems. Apache retained UPCS to make the repairs pursuant to a contract purporting to make UPCS an independent contractor.[7] UPCS made the repairs to the well bay area between March 29 and April 4, 2001 and, upon completion, was under no obligation to continue to inspect and/or maintain the grating. After UPCS completed the repairs, Island personnel inspected and approved UPCS' work. Thereafter, Island continued not only to perform its weekly inspections of the platform, but also worked in the well bay area daily. No additional grating problems were detected in the four and a half month span between the UPCS' repairs and Mr. Johnson's accident.

## III. Summary Judgment Standard

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Fed. R. Civ. Proc. 56(b). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions

---

[5]The parties do not provide the Court with the source of the agreement as to maintenance as that issue is not referenced in Apache Exhibit 2. The only item provided that evidences the parties agreement is the "Weekly Checklist" which asks "Is there any grating or handrails missing or damaged?" (Island Exhibit A(1).)

[6]No party or witness can recall whether or not the particular piece of grating involved in plaintiff's accident was repaired or in need of repair when UPCS was hired to repair the grating in the well bay area.

[7]See "Master Service Contract" attached as Exhibit 7 to Apache's Motion for Summary Judgment [Doc. 59] and containing language identical to that of footnote 1, *supra*.

on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c).

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . . When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party. Fed. R. Civ. Proc. 56(e).

As the Fifth Circuit has pointed out:

> This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.* ...[S]ummary judgment is appropriate in *any* case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*)(citations omitted)(emphasis in original).

In evaluating the evidence provided in support of, and in opposition to, a Motion for Summary Judgment, "[t]he court must view facts and inferences in the light most favorable to the party opposing the motion." Hunt v. Rapides Healthcare Sys. LLC, 277 F.3d 757, 762 (5th Cir. 2001). "A factual dispute precludes a grant of summary judgment if the evidence would permit a reasonable jury to return a verdict for the non-moving party." Id. In evaluating evidence to determine whether a factual dispute exists, "[c]redibility determinations are not part of the summary judgment analysis." Id. To the contrary, "[i]n reviewing all the evidence, the court must disregard all evidence favorable to the moving party *that the jury is not required to believe*, and should give credence to

the evidence favoring the non-moving party, *as well as that evidence supporting the moving party that is uncontradicted and unimpeached.*" Roberts v. Cardinal Servs., 266 F.3d 368, 373 (5th Cir. 2001) (emphases added).

**IV. Applicable Law**

Federal jurisdiction in this matter is based on the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. § 1331 *et seq.* "OCSLA adopts the law of the adjacent state (Louisiana) as surrogate federal law, to the extent that it is not inconsistent with other federal laws and regulations. "Thus the law applicable is 'federal law, supplemented by state law of the adjacent state.'" Fruge v. Parker Drilling Co., 337 F.3d 558, 560 (5th Cir. 2003)(citations omitted); *see also* 43 U.S.C. § 1333(a)(2)(A).

**A. Louisiana Civil Code art. 2315 (Negligence)**

Plaintiff has made claims against all defendants under La. C.C. art. 2315, which states in pertinent part, "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." In order to impose liability under art. 2315, courts applying Louisiana negligence law undertake a duty-risk analysis. Under that analysis, a plaintiff must prove:

> (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element);
>
> (2) the defendant failed to conform his or her conduct to the appropriate standard of care (breach of duty element);
>
> (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element);
>
> (4) the defendant's substandard conduct was the legal cause of the plaintiff's injuries (the scope of protection element); and
>
> (5) actual damages (the damages element.)

Westchester Fire Ins. Co. v. Haspel-Kansas Inv. P'ship, 342 F.3d 416, 419 (5th Cir. 2003) (citing

Pinsonneault v. Merchs. & Farmers Bank & Trust Co., 816 So.2d 270, 275-76 (La. 2002)).

## B. Louisiana Civil Code articles 2317, 2317.1 and 2322 (Premises Liability)

Plaintiff asserts additional claims against Apache under La. C.C. arts. 2317, 2317.1 and 2322.

He also urges this Court, if it finds that Apache did not retain operational control over the platform,

to apply articles 2317 and 2317.1 to Island as joint custodian of the platform.

Louisiana Civil Code articles 2317, 2317.1 and 2322 define the basis for delictual liability

for defective things and buildings under Louisiana law. Article 2317, entitled "Acts of others and

of things in custody" states:

> We are responsible, not only for the damage occasioned by our own act, but for that
> which is caused by the act of persons for whom we are answerable, or of the things
> which we have in our custody. This, however, is to be understood with the following
> modifications.

Louisiana Civil Code article 2317.1 provides:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin,
> vice, or defect, only upon showing that he knew or, in the exercise of reasonable care,
> should have known of the ruin, vice, or defect which caused the damage, that the
> damage could have been prevented by the exercise of reasonable care, and that he
> failed to exercise such reasonable care. Nothing in this Article shall preclude the
> court from the application of the doctrine of res ipsa loquitur in an appropriate case.

To prevail on a claim brought under article 2317.1, an injured plaintiff must prove: (1) the

defendant owned or had custody of the thing; (2) the thing contained a ruin, vice or defect which

presented an unreasonable risk of harm to others; (3) the ruin, vice or defect caused the damage; (4)

the defendant knew or, in the exercise of reasonable care, should have known of the ruin, vice or

defect which caused the damage; (5) the damage could have been prevented by the exercise of

reasonable care by the owner or custodian; and (6) the owner or custodian failed to exercise such reasonable care.

Louisiana Civil Code article 2322 provides:

The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

To prevail on a claim premised upon La. C.C. art. 2322, a plaintiff must prove: (1) there is a building; (2) the building is owned by the defendant; (3) there is a "ruin," caused by some vice in the building's construction or by a neglect to repair it; (4) the owner knew or should have known about the vice or defect; (5) the vice or defect caused plaintiff's damages; (6) the damages could have been prevented by the exercise of reasonable care; and (7) the defendant failed to exercise such reasonable care.

At all times pertinent to this litigation, Louisiana law has imposed a negligence standard of care upon those who own or have *garde* over physical objects in this State. While Louisiana did impose, prior to 1996, strict liability upon owners whose things caused harm to others, the Louisiana Supreme Court has repeatedly acknowledged that strict liability is no longer imposed upon owners or guardians of things in this State. "By requiring knowledge or constructive knowledge...the legislature effectively eliminated strict liability under Article 2317, turning it into a negligence claim." Laysone v. Kansas City Southern Railroad, 786 So.2d 682, 689 n.9 (La. 4/3/01). As the law now requires that a property owner knew or should have known of the ruin, vice or defect, the mere

showing that a defect existed which caused injury will be insufficient to carry the burden of proof. *See e.g.*, Weber v. Alton Ocshner Med. Found. Hosp., 759 So.2d 146, 149 (La. App. 5th Cir. 2000). Knowledge of the defect is an essential element to the imposition of liability. Id.

### C. *Res Ipsa Loquitur*

The plaintiff's arguments, although not expressly stating such, could be construed as raising the doctrine of *res ipsa loquitur* as suggested by certain of defendant's arguments. The Fifth Circuit has recently discussed the doctrine as it is used in Louisiana law:

> The principle of res ipsa loquitur is a rule of circumstantial evidence that infers negligence on the part of defendants because the facts of the case indicate that the negligence of the defendant is the probable cause of the accident, *in the absence of other equally probable explanations offered by credible witnesses.*
>
> The defendant's negligence under *res ipsa* may be proved by circumstantial evidence alone when that evidence establishes more probably than not, that the injury was of a kind which ordinarily does not occur in the absence of negligence, that the conduct of the plaintiff or of a third person was sufficiently eliminated by the evidence as a more probable cause of the injury, and that the indicated negligence was within the scope of the defendant's duty to the plaintiff.

Brown v. Olin Chem. Corp., 231 F.3d 197, 200-01 (5th Cir. 2000) (citations omitted) (emphases added).

In order for the doctrine of *res ipsa loquitur* to apply, it must be shown that: (1) the circumstances surrounding the accident were such as to create a presumption of negligence on the part of the defendant; (2) control and management of the instrumentality that caused the accident was vested exclusively in the defendant; and (3) the plaintiff's position was such that he is unable to explain the circumstances which caused the accident, whereas the defendant possesses knowledge of, or has the ability to obtain information regarding the cause of the accident. Campbell v. Otis Elevator Co., 808 F.2d 429, 432 (5th Cir. 1987); Bianchini v. Humble Pipe Line Co., 480 F.2d 251,

255 (5th Cir. 1973). Because the doctrine of *res ipsa loquitur* is a "'qualification of the general rule that negligence is not to be presumed,' [it] must be sparingly applied." Spott v. Otis Elevator Co., 601 So.2d 1355, 1362 (La. 1992), *citing* Day v. National U.S. Radiator Corp., 128 So.2d 660, 665 (1961).

## V. UPCS' Motion for Summary Judgment

Plaintiff has asserted a negligence claim against UPCS pursuant to La. C.C. art. 2315. Plaintiff has the obligation, in response to the defendant's evidence and argument presented within its Motion for Summary Judgment, to produce evidence demonstrating the existence of a genuine issue of material fact as to each of the challenged elements of its case for which he will bear the burden of proof at trial. Rizzo v. Children's World Learning Ctr., 84 F.3d 758, 762 (5th Cir. 1996). This burden is not satisfied with "some metaphysical doubt as to the material facts," nor by only a "scintilla" of evidence. Little, *supra*.

In its Motion for Summary Judgment, UPCS challenges the sufficiency of evidence regarding two essential elements of plaintiff's negligence claim: whether UPCS owed a duty to plaintiff and, if it did owe such a duty, whether it breached its duty to exercise reasonable care. UPCS avers that the only duty it owed was to properly repair and/or replace the grating and grating supports in the well bay area that were in need of repair or replacement at the time that UPCS was hired to work on the platform (from March 29 to April 4, 2001). In response, plaintiff argues that UPCS had a "duty to inspect, discover and remedy the problems associated with the grating and the grating clips four and one-half (4 ½) months prior to the accident when they were performing work on the platform" and "...if UPCS would have performed its work properly and performed the duties that were assigned

to it, Johnson's accident *may* not have happened."[8] (Emphasis added.) [Doc. #107, p. 13]

Even accepting for the sake of argument that UPCS owed a duty to Mr. Johnson, plaintiff has produced no evidence that UPCS breached such a duty. Although no one can recall whether or not the particular piece of grating involved in plaintiff's accident was in need of repair when UPCS made repairs in the well bay area, some four and a half months before plaintiff's accident, there is nothing in the record (other than plaintiff's argument) to suggest that UPCS was negligent in performing the repairs it did make. To the contrary, plaintiff's own expert, Calvin Barnhill, stated at his deposition that he had no evidence that the piece of grating involved in this accident was missing or damaged before the accident. (Deposition of Calvin Barnhill, pp. 82-83.) After completion of the repairs, Island inspected and approved UPCS' work. Island continued to perform weekly inspections of, as well as work in, the well bay area up until the time of plaintiff's accident and did not note any additional problems with the grating in the well bay area during that time. After completion of its limited employment, UPCS was under no continuing obligation to continue to inspect and/or maintain the grating.

Plaintiff argues that UPCS should have used more clips to secure the grating, but this argument, without supporting evidence, is not sufficient to create a true factual issue. As previously stated, a party opposing summary judgment does not satisfy his burden with "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." Little, *supra*. There are a myriad of reasons why the grating in the well

_____

[8]Island, who also opposes UPCS' motion for summary judgment, makes basically the same argument as plaintiff: that they relied upon UPCS to properly repair the grating in the well bay area. The Court's analysis above applies equally to Island.

bay area could have become loose[9]; plaintiff has failed to demonstrate that the reason the grating might have come loose was due to the negligence of UPCS.

Plaintiff seems to imply that the doctrine of *res ipsa loquitur* should apply - *i.e.*, negligence should be inferred from the mere fact that plaintiff's accident occurred. In order for the doctrine of *res ipsa loquitur* to apply, it must be shown that: (1) the circumstances surrounding the accident were such as to create a presumption of negligence on the part of the defendant; (2) control and management of the instrumentality that caused the accident was vested exclusively in the defendant; and (3) the plaintiff's position was such that he is unable to explain the circumstances which caused the accident, whereas the defendant possesses knowledge of, or has the ability to obtain information regarding the cause of the accident. Campbell at 432; Bianchini at 255. As UPCS had not worked in the well bay area for four and a half months prior to the accident, plaintiff is unable to establish the second requirement necessary to invoke *res ipsa loquitur* and show that UPCS had exclusive control of the grating on which plaintiff fell. The remaining two elements need not be addressed as this Court finds that doctrine inapplicable as one pivotal element is not found.

In view of the evidence and argument presented by UPCS to support their position that plaintiff cannot prevail at trial on the basis of negligence, and plaintiff's failure to present any evidence to support his negligence claim against UPCS, this Court finds plaintiff has failed to carry his burden of proof in meeting UPCS's motion and evidence, which is to establish a genuine issue of material fact. Thus, this Court finds that UPCS is entitled to judgment as a matter of law dismissing plaintiffs' claim against UPCS.

---

[9]Some of those reasons, suggested by the parties, are: vibration of the platform caused by the rocking of the sea, deterioration due to rust and the possibility plaintiff knocked the clip with his sledgehammer while working.

## VI. Apache's Motion for Summary Judgment

### A. Plaintiff's claim under La. C.C. art. 2315

In its Motion for Summary Judgment, Apache argues that, "In Louisiana, a principal has no duty to provide a safe work place to the employee of an independent contractor. Furthermore, 'a principal is not liable for the offenses an independent contractor commits in the course of performing its contractual duties' unless he (1) retains operational control over the work or (2) the work is ultrahazardous." (Citations omitted.) Essentially, Apache is arguing that plaintiff will be unable to prove that Apache owed him a duty. In response, plaintiff argues that Apache owed a duty to plaintiff to provide a safe place to work and was negligent in fulfilling that duty.

Plaintiff first argues that Apache was negligent by failing to weld the grating in the well bay area as it had done in other areas of the platform. According to Apache, the grating in the well bay area was secured using clips, rather than by welding, "to permit ease of removal without welding at the wellhead." [Doc. #59, p.4] Plaintiff has not come forward with any evidence showing that the grating in this area should have been welded, despite its functionality. Even plaintiff's own expert, Calvin Barnhill, took no issue with the use of clips rather than welding in the well bay area. (Deposition of Calvin Barnhill, p. 67.) Plaintiff has not carried his burden and shown that there remains a genuine issue for trial regarding a duty to weld the grating in the well bay area.

Plaintiff next argues that Apache was negligent in retaining Island and UPCS to perform work on its platform, and through its retention of these contractors, it violated its duty to provide a safe place to work.[10] Louisiana law provides, as a general rule, that a principal is not liable for the

---

[10]Plaintiff's actual wording is as follows: "As the platform owner and leaseholder, Apache must take action to ensure that the proper contractors and services are in place in order for those persons who work on the platform to remain safe and secure. In the case at issue, Apache had a duty to provide a safe

negligent acts of an independent contractor acting pursuant to the contract. Graham v. Amoco Oil Co., 21 F.3d 643, 647 (5th Cir. 1994). Without evidence to suggest the contractors were incompetent and Apache knew or should have known of this - which there is none, this rule has two exceptions: (1) when the suit arises out of ultrahazardous activities; or (2) when the principal retains operational control over the independent contractor's acts or expressly or impliedly authorizes those acts. Id. As no ultrahazardous activities were involved in the instant matter, the Court must determine whether Apache is liable for the acts of Island and UPCS under the second exception to the general rule. When determining whether a principal retained supervision and control over its contractors, it is the principal's *right* to exercise control that is of primary concern, not the supervision and control actually exercised. Hickman v. Southern Pacific Transport Co., 262 So.2d 385 (La. 1972). In the instant matter, Apache's contract with both Island and UPCS provided:

> 7. INDEPENDENT CONTRACTOR. Contractor shall be and perform at all times as an independent contractor and neither Contractor nor any Contractor Personnel shall be deemed to be subject to the control or direction of Company as to the details of the Work, Company being interested only in the compliance of the Work with the job order. Company shall be entitled to make such inspections as may be necessary in furtherance of its interest and to determine that the Work is being performed in accordance with the job order.

When the contract assigns responsibility to the independent contractor for its own activities, the principal does not retain operational control. Fruge v. Parker Drilling Co., 337 F.3d 558, 564 (5th Cir. 2003). In order to have operational control, the principal must have direct supervision over the step-by-step process of accomplishing the work such that the contractor is not free to do the work in his own way. Id. In the instant matter, the contract clearly shows that Apache did not retain direct, step-by-step supervision. Furthermore, plaintiff has pointed out nothing in the record showing

---

place to work." [Doc. #108, p.8]

that Apache, despite the contract, nevertheless maintained "supervision over the step-by-step process of accomplishing the work" conducted on the platform. Finally, as noted, plaintiff has not pointed the Court to any evidence demonstrating a history of substandard work by Apache's contractors. Even plaintiff's expert, Mr. Barnhill, took no issue with Apache's retention of Island or UPCS and agreed with counsel that they are competent and capable offshore contractors. Thus, the Court concludes plaintiff's argument as to Apache on this issue is not persuasive.

Plaintiff asserts that Apache has an "obligation" (or duty) under the Minerals Management Services Regulations (MMS) and the Coast Guard Regulations and that these regulations are relevant evidence in weighing a defendant's culpability. [Doc. #77, p.10] Specifically, plaintiff argues that because Apache is the sole leaseholder under MMS regulations, it is solely responsible for fulfilling obligations under the MMS regulations and cannot delegate those obligations to an independent contractor.[11] Plaintiff cites no cases which proclaim the argued requirements as nondelegable. Rather, "[t]he regulations govern the parties' joint and several liabilities vis-à-vis the Government, not amongst themselves." Fruge at 563. Numerous cases have held that no cause of action arises merely from the breach of MMS regulations. See e.g., Fruge at 563; Romero v. Mobil Exploration & Producing, Inc., 939 F.2d 307,309 (5th Cir. 1991); Bourg v. Texaco Oil Co., 578 F.2d 1117 (5th Cir. 1978); Olsen v. Shell Oil Co., 561 F.2d 1178 (5th Cir. 1977). Louisiana law does, however, recognize that applicable federal regulations may be relevant evidence in weighing a defendant's culpability, Romero at 311 (citing Dyson v. Gulf Modular Corp., 338 So.2d 1385, 1391 (La. 1976)), but does not go so far as to hold that the regulations in and of themselves create a private right of

---

[11]As examples, plaintiff cites 30 CFR 250.107 "What must I do to protect health, safety, property, and the environment?", 30 CFR 250.912 "Periodic inspection and maintenance" and 30 CFR 250.146 "Who is responsible for fulfilling leasehold obligations?"

action.

Plaintiff also, argues Apache is liable under 33 CFR 142.4 of the Coast Guard regulations. Other than citing 33 CFR 142.4, plaintiff does not specifically delineate what duty Apache violated vis-à-vis the Coast Guard Regulations. The portion of 33 CFR 142.4 quoted by plaintiff in his brief is as follows:

> (a) Each holder of a lease or permit under the Act shall ensure that all places of employment within the lease area or within the area covered by the permit on the OCS are maintained in compliance with workplace safety and health regulations of this part, and in addition, free from recognized hazards.
>
> (b) Persons responsible for actual operations, including owners, operators, contractors, and subcontractors, shall ensure that those operations subject to their control are **conducted in compliance with workplace safety and health regulations of this part and, in addition, free from recognized hazards.** (Emphasis added by plaintiff.)

Defendant has not specifically addressed the Coast Guard regulations in its briefs other than to say, they do not apply as no vessel is involved. Plaintiff has not explained why the Coast Guard regulations would apply to a platform or which specific "workplace safety and health regulations" defendant allegedly violated. Moreover, neither party has cited any jurisprudence to this Court addressing whether or not these regulations create a private cause of action. *See e.g.* Centraal Stikstof Verkoopkantoor, N.V. v. Alabama State Docks Dep't, 415 F.2d 452, 456 (5th Cir. 1969) ("The hard fact remains however that these regulations [Coast Guard regulations] provide no cause of action for a private concern which is seeking damages for destroyed cargo. The rules are essentially safety regulations and can only be enforced by the United States.") As such, this Court finds defendant's arguments to be persuasive and that the plaintiff has failed to carry his burden of proof and shown that there remains a genuine issue to meet defendant's motion and argument on this issue.

Finally, plaintiff alleges that Apache was negligent by failing to have an inspection maintenance program to maintain its facility over and above the routine inspection performed by the onsite operator in order to assure that the facility was maintained in a safe and proper condition. Apache required Island to perform a weekly inspection of the platform's grating and handrails. (See footnote 5, *supra*.) However, whether or not that weekly inspection included an inspection of the grating clips is at issue. Apache argues that it contracted with Island to inspect the grating on the platform, which included an inspection of the grating clips; Island argues the inspection does not extend to an inspection of the clips. A determination of who had the duty of inspecting the clips necessarily entails an examination of the agreement between Island and Apache regarding maintenance and inspection, which has not been provided to the Court. If Apache had no one inspecting the grating clips in question, and the agreement between Apache and Island did not include an inspection of the clips, then the argument that Apache should have had an inspection maintenance program over and above the routine inspection performed by Island is more persuasive. As such, whether or not Apache had a duty to inspect the grating clips in question or had contractually delegated its duty to Island is a question of fact that cannot be determined by summary judgment. Due to the foregoing, Apache's Motion for Summary Judgment is DENIED as to plaintiff's claim under La. C.C. art. 2315 that Apache should have had a maintenance program to maintain its facility over and above the routine inspection performed by the onsite operator in order to assure that the facility was maintained in a safe and proper condition.[12]

---

[12]The Court also notes that Apache, in its brief, addresses the concept of *res ipsa loquitur* and its inapplicability to the facts of this matter. Plaintiff has not explicitly invoked this doctrine, however, defendant addresses the issue and the doctrine could be inferred from plaintiff's arguments. However, the Court finds res ipsa to be inapplicable, as that doctrine requires that control and management of the instrumentality responsible for the damage or injury be *exclusively* vested in the defendant; in the instant

## B. Plaintiff's claim under La. C.C. arts. 2317, 2317.1 and 2322

As stated in Section IV, B, *infra*, in order to impose liability under La. C.C. art. 2317, 2317.1 and 2322, plaintiff must prove at trial, in part, that the owner or custodian (1) knew or should have known of the defect, and (2) failed to take reasonable steps to prevent the damage. In the instant matter, no evidence has been presented suggesting that Apache had actual knowledge of a loose grating, even if this Court were to assume a loose grating existed at the time of plaintiff's accident. Therefore, the question becomes whether or not Apache should have known about the alleged loose grating. Apache argues that the only notice it received of grating problems came from Island in March of 2001. No evidence has been presented to the contrary. In response to this information, Apache states that it dispatched UPCS to perform repairs under the instruction of the platform operator, Island. The repairs were performed more than four months before the incident and were reported satisfactory by Island. There were no further reports of problems with the grating until this accident; work continued in this area between the time of repair and the accident. In the interim, Island, pursuant to its agreement with Apache, continued its routine inspections of the platform which included the well bay area. Thus, this Court finds there is not sufficient evidence to suggest Apache *knew* of a problem.

Whether or not Apache should have known about the alleged loose grating requires a determination of the nature of the inspection actually being done each month and the contractual relationship between Apache and Island. Both these issues are in dispute. As owner of the platform, Apache could have liability under 2317.1 and 2322 if it knew or should have known of a defect.

---

matter, Apache did not maintain exclusive control of the grating or platform. Bianchini at 255; *see also* § VII (B), *infra*, for further elaboration.

Apache argues it contracted with Island to inspect the platform; Island argues the contract does not extend to inspection of the clips. A determination of who, if anyone, was or should have been inspecting, necessarily entails an examination of the agreement between Island and Apache regarding maintenance, which has not been provided to the Court. If Apache had no one inspecting the grating clips in question, an argument they should have known of the alleged defect could be made; however, if Apache had a competent contractor performing regular inspections of the grating clips in question and no problems were found, the argument Apache should have known of an alleged defect is less persuasive. The nature of the obligation to inspect, addressed by way of the agreement, is not known and thus a genuine issue of material fact exists as to who, by way of the contract, if anyone was inspecting the area in question. Consequently, as there exists a genuine issue of material fact as to whether the actual instrumentality and area alleged to have caused the injury to plaintiff was being inspected and by whom, *i.e.* the breadth and nature of the agreement as it relates to the clamps on the grating in the well-head area, this Court cannot determine whether or not Apache should have known of an alleged defect in the clamps that allegedly caused the damage. Due to the foregoing, Apache's Motion for Summary Judgment is DENIED as to plaintiff's claims under La. C.C. arts. 2317, 2317.1 and 2322.

## VII. Island's Motion for Summary Judgment

### A. Plaintiff's claim under La. C.C. art. 2315

Island asserts in its Motion for Summary Judgment that it "had no duty to inspect, nor to discover a loose grating clip that allowed the grating to shift below plaintiff." [Doc. # 100, p.4] Plaintiff claims that Island owed him "a duty under the negligence principles of La. C.C. 2315."[13]

---

[13]Plaintiff does not further specify the duty.

[Doc. #108, p.9] No party disputes that Island was required to conduct a weekly inspection, which included an inspection of the grating.[14] [Doc. #100, p.6] Island claims this inspection did not include the grating *clips*; plaintiff claims it did. Whether or not the duty Island willingly took on by way of "agreement" (that of performing a weekly inspection which covered the grating) extended to an inspection of the mechanism whereby that grating was held in place is a question of fact that is in dispute and thus cannot be determined by way of summary judgment.[15] Due to the foregoing, Island's Motion for Summary Judgment as to the plaintiff's claims against it pursuant to La. C.C. art. 2315 is DENIED.

### B. Plaintiff's claims under La. C.C. arts. 2317 and 2317.1

Plaintiff asserts in its opposition, that if this Court finds "that Apache did not maintain operational control of the platform, it is submitted that Island Operating is also liable under La. C.C. Art. 2317 and La. C.C. Art. 2317.1 as joint custodian of the platform." [Doc. 108, p.7] In response, Island argues that plaintiff has not alleged those causes of action in his Supplemental and Amending Complaint (the pleading wherein Island is first named) and therefore cannot raise those arguments now. Alternatively, Island argues that it is not liable under articles 2317 and 2317.1 because it did not maintain care, custody or control of the platform.

---

[14]Jerry Fincher (a field foreman for Island at the time of the accident; now an employee or Apache), Ronnie Barras (an Apache production foreman) and Gregg Falgoust (described only as the "sole principal" of Island) all testified that if Island personnel detected loose grating or clips during their inspections, Island would tighten the grating. (Deposition of Jerry Fincher, pp. 52-53, 134-135; Deposition of Ronnie Barras, pp. 36, 69-70; Deposition of Gregg Falgoust, pp. 33-34.)

[15]This Court takes no position on whether or not this is an issue that would properly be before a jury or the judge; this Court merely holds that this is not an issue that can be decided by way of summary judgment based upon the evidence presented. What the nature of the agreement between Island and Apache is and what duties it might impose, is a question of fact. Whether a duty, once assumed, exists, and to whom, however is a question of law. *See e.g.* Graham v. Amoco Oil Co., 21 F.3d 643, 647 (5th Cir. 1994) ("Duty is a question of law.")

In response to Island's first argument, the Court finds that plaintiff has pled facts sufficient in nature to state a claim under La. C.C. arts. 2317 and 2317.1. Paragraph one of plaintiff's petition states that it "re-alleges and re-avers all of the allegations of the Original Complaint as if pled herein *in extenso*." The Original Complaint specifically asserts that plaintiff was injured as a result of defective equipment and/or the platform's "state of ruin." (See Original Complaint, ¶ 3.) Moreover, the Supplemental and Amending Complaint specifically naming Island as a defendant states that Island is liable to plaintiff for "[u]sing inadequate and defective equipment, specifically, failing to secure the grating around the well." (See Supplemental and Amending Complaint, ¶ 4(d)).

Federal Rule of Civil Procedure 8(a) requires only that plaintiff make a short and plain statement of the claim showing that the pleader is entitled to relief. Rule 8 and the case law do not require an inordinate amount of detail or precision, as the function of a complaint is to give the defendant fair notice of the plaintiff's claim and the grounds upon which the plaintiff relies. St. Paul Mercury Ins. Co. v. Williamson, 224 F.3d 425, 434 (5th Cir. 2000). "The 'form of the complaint is not significant if it alleges facts upon which relief can be granted, even if it fails to categorize correctly the legal theory giving rise to the claim.'" Id. at 434-435 (citing Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 604 (5th Cir. 1981). In the instant matter, although plaintiff does not specifically state that he is making a claim against defendant based upon the legal theories espoused in La. C.C. arts. 2317 and 2317.1, such claims could conceivably come within the allegations contained in both complaints.

The Court now turns to Island's alternative argument, that it is not liable because it did not maintain care, custody or control of the platform, rather, Apache did. In support of this argument, Island cites Royer v. Citgo Petroleum Corp., 53 F.3d 116, 119 (5th Cir. 1995), which states the owner

of a thing is presumed to be its guardian. However, the presumption is rebuttable if the owner received no substantial benefit from the ownership nor had any control or authority over the thing. Id. However, when a party does not receive substantial benefit from a thing, the party must have *complete* control over the thing to have custody. Id., n.3.

In Doughty v. Insured Lloyds Ins. Co., 576 So.2d 461 (La. 1991), the Louisiana Supreme Court examined the "substantial benefit" prong of the inquiry and found that the owner of a lumber mill derived some benefit because the equipment at issue (a wood planer) was part of the business from which the plaintiff made his income. However, the court found it not to be a *substantial* benefit, stating that the piece of equipment whose custody was at issue was not the "main piece of equipment which sustained the profitability of the business." Id. at 464. The court also found that because the plaintiff exercised no control or authority over the thing, the plaintiff did not have custody of the thing. This Court notes each of the cases cited by Island address the custody of a thing which grows out of ownership of the thing. Island did not own the "thing" in question. Rather, plaintiff argues Island, through its obligations assumed by agreement actually had custody of the "thing."

The requirement as to custody, *i.e.*, whether or not a party has control or authority over a thing, is addressed in Haas v. Atlantic Richfield, 799 F.2d 1011 (5th Cir. 1986). In Haas, an oilfield worker brought a negligence action against a platform owner to recover damages for injuries sustained while working on a platform. The Fifth Circuit found that the owner of the platform and certain equipment at issue retained authority and control over the safety and operations on the platform and derived substantial financial benefits therefrom. The issue in Haas was who had custody of a certain piece of equipment at the time of the accident. In its analysis of "custody", the

Court noted the following:

> Judge Tate, then a justice on the Louisiana Supreme Court, pointed out that the statutory phrase "in our custody" is a translation of "sous sa garde" from the French Civil Code and that this translation does not fully express the concept of the "garde" of a "thing." He noted that one may lose the actual physical custody of a thing without losing its "garde." The things in ones garde are "those things to which one bears such a relationship as to have the right of direction and control over them, and to draw some kind of benefit from them." Haas at 1014 (*citing* Loescher v. Parr, 324 So.2d 441, 447 n.6 (La. 1975).)

The Haas court ultimately found that although the contractor's employees used, maintained and stored the piece of equipment, the platform owner maintained a general supervisory role. One of the platform owner's employees testified that the owner was responsible for the safety of the operations on the platform. The employee of the owner stated that if he saw a contractor's employees using unsafe equipment or performing a job in an unsafe manner, he would stop the operation.

In the instant matter, whether Island or Apache maintained custody of the platform in a manner sufficient to trigger the result in Haas is a question in dispute and one of fact, involving an examination of direction and control and the contract and what, if any, impact that contract might have had, which cannot be determined by way of Summary Judgment based upon the evidence presented. Due to the foregoing, Island's Motion for Summary Judgment is DENIED as to plaintiff's claims under La. C.C. art. 2317 and 2317.1.

## VIII. Conclusion

For the foregoing reasons, the Motion for Summary Judgment filed by United Production & Construction Services, Inc. is GRANTED in its entirety; the Motion for Summary Judgment filed by Apache Corporation is DENIED in part and GRANTED in part; and the Motion for Summary

Judgment filed by Island Operating Company is DENIED in its entirety.

Lafayette, Louisiana, this _____ day of November, 2005.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE